UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRY J. DICK,<br><br>                Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of social<br>Security,<br><br>                Defendant. | NO.  CV-04-349-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

   BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on June 6, 2005. (Ct. Rec. 10, 12.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 12) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 10).

   Plaintiff filed an application for disability income benefits ("DIB") on February 6, 1999. (Tr. 149.) His claim was denied.  After a hearing, Administrative Law Judge (hereinafter, "ALJ,") Mary B. Reed denied benefits in a decision issued on January 25, 2001. (Tr.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                - 1

25.)  The Appeals Council denied review. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ found that plaintiff had not engaged in substantial gainful activity after his alleged onset date of October 1, 1996. (Tr. 25.) The ALJ found that though plaintiff suffers from a past gunshot wound to his left hand with the residual functional loss of three fingers, chronic lumbosacral pain without evidence of arthritis or degenerative disc disease, mild degenerative arthritis of the cervical spine, post-traumatic stress disorder ("PTSD"), somatoform disorder, and alcohol abuse in reported remission, impairments that are severe, his impairments do not meet or medically equal the Listings. (Tr. 19-20.) The ALJ found that plaintiff retains the residual functional capacity for medium work with specified limitations. (Tr. 24.) Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform his past relevant work as a surveyor. (Tr. 24-25.) The ALJ found that Plaintiff was not disabled before his insured status expired on March 31, 1997. (Tr. 26.)

**STANDARD OF REVIEW**

The standard for review by this Court is set forth In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 2

might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, benefits are denied. If not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to step three.

<u>Step 3</u>: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. 404 Subpt. P, App. 1. If the impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal a listed impairment, the evaluation continues to step four.
<u>Step 4</u>: Does the impairment prevent the claimant from performing past relevant work? 20 C.F.R. 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the decision maker determines the claimant's residual functional capacity. If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past work, the decision maker continues to step five.
<u>Step 5</u>: Is the claimant able to perform other work in the national economy considering age, education, work experience and residual functional capacity? 20 C.F.R. 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the initial burden of proving disability. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F. 2d 1496, 1498 (9th Cir. 1984).

**ISSUES**

The general issue raised is whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether that decision was based on proper legal standards. The single issue raised by the plaintiff is whether the ALJ properly evaluated two examining physicians' opinions with respect to plaintiff's mental impairments.

**ADMINISTRATIVE HEARING**

Plaintiff was 50 years old on the date of the hearing. He recently remarried. (Tr. 70.) Plaintiff obtained a GED while in the military. (Tr. 71.) He sleeps 3-4 hours nightly and has

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 4

nightmares. (Tr. 88.) Plaintiff can climb stairs but gets "winded." (Id.) He can lift 15 to 20 pounds, sit for 60 to 90 minutes before changing positions, and stand for 30 minutes. (Tr. 85-86.) Plaintiff is able to walk ½ mile and can drive. His activities include fishing and hunting deer. (Tr. 86-87; 98; 102-03.) He hunted deer in 1997, 1998 and 1999, and tries to do all of his hunting alone. (Tr. 103-06.) Plaintiff fishes about once a week for 2 to 3 hours a time. (Tr. 103.) He cuts wood, up to 3 cords with a chainsaw. (Tr. 106.) Plaintiff testified that he last drank 2-3 years ago, but when asked if he had abstained from alcohol for the past couple of years, he responded, "No, I couldn't honestly say that." (Tr. 91.)

## ANALYSIS

### Evaluating medical opinions

Plaintiff alleges that the ALJ erred by failing to properly credit the opinions of examining physicians Helen Pamintuan, M.D., and Dennis R. Pollack, Ph.D. (Ct. Rec. 11 at 12-15.) He argues that the ALJ erred by giving greater weight to the opinion of consulting physician Allen Bostwick, Ph.D. The Commissioner responds that the ALJ rejected portions of the examining doctors' opinions for specific and legitimate reasons supported by substantial evidence. (Ct. Rec. 13 at 7.)

The opinion of an examining physician may be rejected for "specific, legitimate reasons" that are supported by substantial evidence in the record. *See Andrews v. Shalala*, 53 F. 3d 1035, 1043 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection

of either an examining or a treating physician's opinion. *Lester v. Chater,* 81 F. 3d 821, 831 (9th Cir. 1995), citing *Pitzer v. Sullivan*, 908 F. 2d 502, 506 n. 4 (9th Cir. 1990). The opinion of a non-examining physician may constitute substantial evidence if it is supported by and consistent with other evidence. *Andrews,* 53 F. 3d at 1043; *Lester,* 81 F. 3d at 830-31. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F. 3d 1151, 1156 (9th Cir. 2001).

On March 3, 1997, Helen Pamintuan, M.D., examined plaintiff when he sought to increase his VA disability rating from 40%. (Tr. 387.) The 40% disability rating was based on a gunshot wound plaintiff suffered in 1968 resulting in the loss of three fingers from his left hand. (Tr. 387.) Dr. Pamintuan indicates that she relied on information provided by the plaintiff, the clinical chart, and the C-file in performing her evaluation. (Id.)

Plaintiff told Dr. Pamintuan that he quit drinking about two years earlier. (Tr. 388.) At the time of the evaluation plaintiff took darvocet for low back pain following a car accident in January of 1997 and an antidepressant, zoloft. Plaintiff said that he saw a mental health counselor in 1970 pursuant to a court order but only attended for two months. No medications were prescribed. (Id.) He went to Veterans Outreach in 1995 for symptoms (apparently of PTSD) and said that since then he had attended Veterans Outreach at least twice monthly. (Id.)

Plaintiff reported that he had been working in forestry development service "about three to four months in a year until the

present time" (March of 1997). (Tr. 389.) He had nightmares twice monthly and averaged three hours of sleep nightly. He often experienced abdominal pain and his back hurt all the time. Plaintiff enjoyed fishing and hiked a lot by himself. (Id.)

Dr. Pamintuan administered several tests. (Tr. 390.) She diagnosed PTSD, delayed, chronic; chronic lumbar back pain, and moderate psychosocial and environmental problems secondary to occupational and economic problems. (Tr. 392.) She assessed a past GAF of 55, and a current of 60. (Id.) A GAF of 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995).

The ALJ notes that, despite his diagnosis of PTSD, plaintiff was able to work:

> "The VA examiner [Dr. Pamintuan] reported a diagnosis of PTSD, but no clinical findings or functional limitations were specified that are inconsistent with the assessment of mental residual functional capacity delineated in this decision. (Exhibit 9F.) The record reflects that even though the claimant was diagnosed with PTSD he was able to continue with work related activities."

(Tr. 23.)

The record reveals that plaintiff was able to work, both after his first diagnosis of PTSD in 1995, and before and after Dr. Pamintuan's diagnosis in March of 1997. The ALJ observes that the "record fails to establish that he was precluded from the performance of his past relevant work for any continuous 12 month period relevant to this adjudication. " (Tr. 20.) As noted, the relevant period is October 1, 1996 through March 31, 1997. The ALJ states:

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 7

> "With respect to the claimant's mental impairments, . . . He evidently attended three individual sessions but **"has seasonal employment** which is detrimental to coming to [sic] Vet Center in summer." Exhibit 7F at 6. (It is noted that on **July 17, 1996**, **the claimant entered into a contract** with the Confederated Tribes of the Colville Reservation **to mark trees** for the sum of $2,965.00. Exhibit 11E. Moreover, on **August 13, 1996**, the **claimant** under the business name of Klondike Logging and Reforestation **entered into another contract to mark trees** for the sum of $6,940.00). On **July 24, 1996**, **the claimant** reported nightmares, depression, sleep problems, anger and instrusive thoughts. . . He also **reported being self-employed as a contractor**. Exhibit 7F at 21 [Tr. 286 dated **7/24/96**.] . . . . The claimant did not seek counseling until September 1996. Exhibit 7F 8-9. In **October 1996 he reported being 'very busy with his work and getting ready for work [sic] winter.'** Exhibit 7F at 9. In **October he reported being 'busy working at Forestry development, planting and cutting down trees.'** His affect was appropriate and mood less depressed, with nightmares decreased. He reported anger problems, but he dealt with it by going for long walks in the mountains."

(Tr. 20-21.) (emphasis added.) The ALJ notes that plaintiff told Dr. Pamintuan that in the last five years (from 1992 until March of 1997) he worked 3-4 months a year in the forestry development service -- well after the alleged onset date of October 1, 1996. (Tr. 21; Tr. 389.) Although the income derived from plaintiff's forestry work does not amount to substantial gainful activity, his work record shows, as the ALJ observes, that there is no 12 month continuous period of disability within the relevant time frame. (Tr. 19-20.)

The ALJ relied on plaintiff's vocational training efforts when she assessed Dr. Pamintuan's opinion. In February of 1997, a month before the evaluation, plaintiff told the VA that he was leaving for three months of vocational training in Nevada. (Tr. 21, relying on Tr. 280.) At the hearing plaintiff testified that he was training to repair slot machines. He started the program but did not finish due to family and financial problems. (Tr. 102.) As the ALJ noted,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 8

plaintiff began this three month vocational training program four months after the alleged onset date. (Tr. 21; 23-24).

When a claimant can spend a substantial part of his day engaged in the performance of physical activity which is transferable to a work setting, such a finding is sufficient to discredit allegations of disability. *See Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

The opinion of the testifying medical expert, Allen Bostwick, Ph.D., supports assessing mostly mild rather than moderate limitations. (Tr. 59-62.) Dr. Bostwick opined that in two areas plaintiff's limitations could potentially rise to moderate: the ability to act within a schedule (based on the number of plaintiff's missed medical appointments), and the ability to work in proximity to others without being distracted. (Tr. 59-60.) If working with the general public or a large number of co-workers, then this could rise to a moderate limitation depending on the degree of social interaction. (Tr. 60-61.) Dr. Bostwick indicated that a moderate limitation might arise if a supervisor spoke to plaintiff in a belittling or condescending manner. (Tr. 62.) Dr. Bostwick assessed moderate limitations in the ability to interact appropriately with the general public. (Tr. 61.)

The ALJ considered plaintiff's credibility because Dr. Pamintuan based her assessment in part on his self-reported symptoms. (Tr. 23.) The ALJ found plaintiff less than completely credible for several reasons.

Plaintiff failed to disclose his self-employment after the alleged onset date to the SSA, except that he did disclose a brief work attempt as a logger in April of 1997. (Tr. 19.) The record

contains several references to plaintiff as a self-employed logger in 1999 and 2000. (Id.) The ALJ notes that this failure to disclose his self-employment is relevant to the issue of credibility. (Id.)

Plaintiff's reports of alcohol use have been inconsistent. In October of 1996 he reported that he had been sober since July of 1996. (Tr. 21, Tr. 272.) In March of 1997 plaintiff reported that he quit drinking in 1995. (Tr. 388.) Medical records show that on July 13, 1997, plaintiff had alcohol on his breath when admitted to the hospital. (Tr. 533.) On April 18, 1999, plaintiff said that he had been drinking at a wedding. (Tr. 581.) In March of 2000 plaintiff said that he had not consumed alcohol in six or seven years. (Tr. 411.) The ALJ found plaintiff less than completely credible based on his own inconsistent statements.

The ALJ gave Dr. Pamintuan's evaluation limited weight because it was based partly on plaintiff's unreliable report. An opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted. *Flaten v. Secretary of Health and Human Services*, 44 F. 3d 1453, 1463-64 (9th Cir. 1995). Substantial evidence supports the ALJ's specific and legitimate reasons for failing to fully credit Dr. Pamintuan's assessed limitations.

Plaintiff alleges that the ALJ failed to properly credit the March 9, 2000, opinion of examining physician Dennis Pollack, Ph.D. (Ct. Rec. 11 at 12.) The Commissioner responds that the ALJ properly discounted Dr. Pollack's opinions because they were based on plaintiff's less than credible statements, and because the evidence

did not establish that the March of 2000 opinion was probative of plaintiff's impairments during the relevant time frame. (Ct. Rec. 13 at 9-11.)

Dr. Pollack administered tests, including the MMPI. He opined that plaintiff's scores show that he may have been exaggerating his difficulties as his F-scale score was elevated. (Tr. 413.) Dr. Pollack added that "secondary gain is usually found with this profile." (Tr. 413.) He diagnosed PTSD, alcohol dependency, in remission, and somatoform disorder, NOS. (Id.) Dr. Pollack assessed marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 414-15.)

Dr. Bostwick reviewed Dr. Pollack's assessment. (Tr. 64.) He notes that plaintiff told Dr. Pollack he broke bones in his neck when a tree hit him, but the medical chart shows no evidence of an orthopedic injury. The injury was diagnosed as a sprain. (Tr. 65.) He notes that plaintiff told Dr. Pollack he had not worked since 1994. Yet, as Dr. Bostwick points out, in July of 1996 plaintiff told the VA that he worked logging, in February of 1997 he said he worked 3-4 months a year in forestry development service, and in November of 1998 he hurt his right hand while cutting wood. (Tr. 65.) Dr. Bostwick observes that plaintiff told Dr. Pollack he had heart attacks in 1992 and in 1998; however, the records do not support this claim. (Tr. 66.)

Dr. Bostwick agrees with Dr. Pollack that plaintiff's tests gave a valid profile, and that exaggeration of symptoms for secondary gain is present. Dr. Bostwick stated that both the hypochondriasis and psychopathic deviate scales indicate secondary gain. (Tr. 67-68.) Dr. Bostwick noted that plaintiff had no regular psychiatric treatment, which the ALJ found was inconsistent with Dr. Pollack's assessed "marked" limitations. (Tr. 22-23.) In September of 1996, Plaintiff was prescribed zoloft, but thereafter the records show little to no reference to antidepressants or other psychotropic drugs. (Tr. 68.)

The ALJ agreed with Dr. Bostwick that plaintiff's statements to Dr. Pollack were unreliable and thereby diminished the quality of Dr. Pollack's assessment. (Tr. 23.) The ALJ found that Dr. Pollack's March 2000 assessment did not contain any retroactive clinical findings which would support finding that marked limitations existed during the relevant time frame roughly three years earlier. (Id.) The ALJ relied on Dr. Pollack's testing which revealed that plaintiff was motivated by secondary gain to exaggerate his symptoms. (Tr. 24.)

An opinion based on the self-reporting of an unreliable person, evidence of exaggerating symptoms, and daily activities that are inconsistent with assessed impairments are all specific and legitimate reasons to reject an examining physician's opinion. *See Flaten v. Secretary of Health & Human Services*, 44 F. 3d at 1463-64; Andrews v. Shalala, 53 F. 3d 1035, 1042-43 (9th Cir. 1995). The ALJ gave specific and legitimate reasons supported by substantial evidence in the record for discounting the marked impairments

assessed by Dr. Pollack. Accordingly, the ALJ's determination must be affirmed.

In her hypothetical to the vocational expert, the ALJ included the "ability to interact appropriately with the general public is moderately limited." (Tr. 112.) The ALJ included as a conditional moderate limitation the "ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods if working around the general public or groups of people." (Tr. 112.) Considering these moderate limitations, the VE opined that plaintiff could perform his past relevant work as a surveyor. (Tr. 113.)

The ALJ did not rely exclusively on the medical expert's opinion in assessing plaintiff's limitations. The ALJ relied on the evidence of plaintiff's continuous work history as a specific and legitimate reason to assess primarily mild rather than moderate limitations. (Tr. 23.)

Substantial evidence in the record supports the weight that the ALJ gave to the medical opinions of examining physicians Pamintuan and Pollack. As the ALJ observed, plaintiff's statements to medical providers, his daily activities, his profile showing exaggeration of symptoms and secondary gain issues, and the medical evidence as a whole are all inconsistent with the level of impairment claimed at the hearing and arguably assessed by Drs. Pamintuan and Pollack. (Tr. 22-24.) The record supports the ALJ's determination.

**CONCLUSION**

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 10) is

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 13

1 | **DENIED.**
2 |     2. Defendant's Motion for Summary Judgment (Ct. Rec. 12) is
3 | **GRANTED**.
4 |     3. Any application for attorney fees may be filed by separate
5 | Motion.
6 |     4.  The District Court Executive is directed to file this
7 | Order and provide a copy to counsel for Plaintiff and Defendant.
8 | Judgment shall be entered for Defendant and the file **CLOSED.**
9 |         **DATED** this 15th day of July, 2005.

                                      s/ Michael W. Leavitt

                                      MICHAEL W. LEAVITT
                                      UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                      - 14